# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4680 | **DATE** | 2/13/2004 |
| **CASE TITLE** | NANCY MARSHALL vs. ILL. DEPT. OF HUMAN SERVICES, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Summary Judgment Against Plaintiff Marshall (Doc. #41)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' Motion for Summary Judgment is GRANTED (#41). Enter Memorandum Opinion and Order. All pending dates and motions are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | FEB 1 8 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | 54 |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NANCY MARSHALL,           )
                          )
    Plaintiff,        )
                          )  Case No. 00 C 4680
v.                        )
                          )  Judge William J. Hibbler
ILLINOIS DEPARTMENT OF HUMAN )
SERVICES and W.A. HOWE    )
DEVELOPMENTAL CENTER      )
                          )
    Defendants.       )

## MEMORANDUM OPINION AND ORDER

In this case, Nancy Marshall, the Plaintiff, alleges that her employers, the Illinois Department of Human Services ("IDHS") and the W.A. Howe Developmental Center (the "Howe Center") (collectively, the "Defendants"), discriminated against her based upon her race and then retaliated against her because of her complaints of discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, and 42 U.S.C. § 1981. Pending in this case is the Defendants' motion for summary judgment. The Court has examined the submissions by the parties related to the motion and determines that the Defendants' summary judgment motion should be granted on both counts.

I.    **FACTS**

Marshall, an African-American woman, began working for IDHS at the Howe Center in 1987. Approximately 80% of the employees at the Howe Center are minorities, and approximately 80% are women. Marshall started work as a Mental Health Technician ("MHT") trainee, and

currently she is employed as an MHT III. MHTs provide care and training for the service recipients living at the Howe Center. There are five different levels of the MHT position at the Howe Center: the starting level of MHT trainee and then MHT levels I though IV. An MHT III is a lead worker during his or her shift for the living area of the residential house to which he or she is assigned. The MHTs report directly to the Living Unit Administrator ("LUA") for the Unit in which they are assigned. The LUAs then report to the Unit Director. Peter Gordon, an African-American, was Marshall's LUA and direct supervisor in 1999. In the spring of 2000, Mischa Stewart, an African-American, replaced him and became Marshall's LUA. Dorothy Carlson, a Caucasian woman, was Marshall's Unit Director during the times at issue in this case.

### A. Confrontation with Monica Lane.

In June 1999, Monica Lane, an African-American woman working as an MHT II, began working in the same residential house as Marshall. On August 13, 1999, Marshall was temporarily assigned to be an MHT III. After discussing a work matter, Marshall and Lane had a confrontation in which Marshall claims Lane physically and verbally threatened her. Lane had a history of conflict with other co-workers at the Howe Center, and had previously received a five-day suspension for using vulgar and obscene language in front of staff and residents.

Marshall complained to Gordon by making a written statement that Lane had been physically and verbally threatening to her, and had used inappropriate language in a loud and angry tone. On August 16, 1999, Marshall met with Gordon and Carlson and complained about Lane. Another meeting followed, and this time Lane attended as well. Carlson told Lane that she had to stop her inappropriate conduct, and she re-assigned Lane to a different house for a week. Marshall claims that at that meeting Lane threatened her again in the presence of Carlson.

2

On August 18 or 19, 1999, Marshall met with Carol Wade, the Howe Center Equal Employment Opportunity/Affirmative Action (EEO/AA) officer. Wade is African-American. Marshall gave Wade a copy of her written statement about Lane and told Wade about her meeting with Carlson. She described the problems she was having with Lane, which Wade understood to be related to a disagreement they had about decorating the house in which they were working. Wade determined that Marshall's problem was that she was having trouble transitioning from a peer to a leader of her coworkers.

On August 23, 1999, Marshall met again with Lane, Gordon, and Carlson to discuss permanent schedule changes so that Marshall and Lane would not have to work together. Lane refused to have her schedule changed, so Marshall felt she was forced to change her schedule to avoid Lane. Marshall and Lane, however, continued having to work together two or three days per week. After the August 23rd meeting, Lane never verbally or physically threatened Marshall again, although Marshall claims that Lane continued to harass her and that they had perpetual arguments and ongoing battles.

### B. Marshall's Promotions.

Marshall was hired by IDHS as an MHT Trainee on November 16, 1987. She was promoted to MHT I on July 16, 1988; to MHT II on August 1, 1990; and to MHT III on July 1, 2000. The promotion process at the Howe Center involves several steps. First, there has to be an opening for a position, and the MHTs have to submit a bid for the open position. In April 1999, Marshall, then an MHT II, submitted a bid for the MHT III position. On May 24, 1999, Marshall received a memo from Carlson stating that she was selected for the MHT III position. After being selected, MHT IIs must attend training for the MHT III position and then perform a ten week on-the-job training.

3

Marshall attended the mandatory training in November 1999, and following her ten week on-the-job training, she received a "certificate of training" in February 2000. The training certificate is sent to the Illinois Department of Central Management Services ("CMS"), which then mails a grade certificate to the employee's home. At that point, the employee has to bring the certificate to her supervisor, who has to perform a promotional evaluation on the employee. This is followed by a series of additional internal bureaucratic steps before the employee is formally promoted.

Marshall's grade notice from CMS was dated March 28, 2000. After she turned it in to Gordon, her supervisor, Gordon performed a promotional evaluation for her. Marshall signed her promotional evaluation form on May 13, 2000, and Carlson signed the evaluation form on May 30, 2000. There was one more form which Marshall had to sign in order to be formally promoted, which Keith Taylor and Steven Hunter, African-American employees involved with EEO investigations, did not present to Marshall until a later date. Marshall signed this form on August 16, 2000. Marshall's promotion, however, was finalized by the Director of the Howe Center on July 14, 2000, and made retroactively effective as of July 1, 2000. Other MHT IIs who began the promotion process the same time as Marshall had their promotions finalized on April 16 and May 16, 2000.

When an MHT II is selected for a promotion to become an MHT III, he or she may be temporarily assigned to the position of MHT III. When an employee is temporarily assigned to a higher position, the employee receives compensation at the pay level of the higher position. Between May 16, 2000, and July 1, 2000, Marshall was assigned to be an MHT III, and received MHT III pay, on 25 of the 31 days that she worked. Marshall never bid on an MHT IV position.

C. **Counselings.**

Between October 27, 1999, and May 2, 2000, Marshall received four counselings. During

the ten years preceding August 1999, Marshall was never disciplined and only received one counseling for tardiness in October 1996. A counseling is a discussion with an employee regarding a negative incident in an effort to prevent the incident from happening again. Neither IDHS nor the Howe Center consider it to be a discipline of an employee. Counselings are not considered in the promotion process and have no impact on promotions.

On October 27, 1999, Gordon counseled Marshall regarding an incident when a service recipient ran from a house unsupervised. The consequences imposed on an MHT whose service recipient leaves a house unsupervised depends on the specific facts of the incident. An MHT may: (1) receive nothing; (2) receive counseling; (3) be disciplined; or (4) be discharged. Next, on December 29, 1999, Marshall was counseled by Gordon for being 15 minutes late to work on December 13, 1999. The Howe Center's policy is to counsel employees for being 15 minutes late regardless of whether it is their first or second offense of this nature. On January 31, 2000, Marshall received a counseling for an incident that occurred on August 6, 1999, when a service recipient cut herself with a piece of plastic. Marshall was the acting MHT III residence manager at the time of the incident. The Office of Inspector General of IDHS conducted an investigation which took several months. Marshall was given a counseling after the investigation was complete. On May 2, 2000, Marshall received a counseling from her new LUA, Stewart, for a "call in" pattern, which is demonstrated when an employee calls into work for a sick day immediately before or after a scheduled day-off on at least three successive occasions.

Based on the foregoing facts, Marshall alleges that Defendants: (1) discriminated against her on the basis of race through (a) Lane's actions; (b) Carlson's actions; and (c) counselings she received; and (2) retaliated against her for: (a) complaining about Lane; and (b) complaining about

5

Carlson's failure to process and investigate the Lane incident. Marshall filed an EEOC charge of discrimination on June 1, 2000. She filed her initial complaint on August 2, 2000, and her amended complaint on February 16, 2001. Defendants brought their motion for summary judgment on May 19, 2003.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, and other materials in the record show that there is no disputed issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment may be granted when the record as a whole shows that a rational trier of fact could not find for the non-moving party. *Rogers v. City of Chi.*, 320 F.3d 748, 752 (7th Cir. 2003). The non-moving party must make a showing sufficient to establish any essential element for which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The Court considers the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000).

## III. ANALYSIS

Marshall brings her claims under both Title VII, 42 U.S.C. 2000(e) *et seq.*, and 42 U.S.C. Section 1981, but she does not distinguish between the two statutes. Under § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, . . . or to segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment

opportunities or otherwise adversely affect his status as an employee because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1-2).

Although Defendants neglected to address Section 1981 in their motion for summary judgment, when a plaintiff alleges intentional discrimination, Title VII and Section 1981 actions have the same liability standards, and they are analyzed in the same manner. *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir. 1998). Therefore, the Court's rulings apply with equal force to Marshall's Title VII and Section 1981 claims.

### A. Discrimination.

Marshall alleges that IDHS and the Howe Center racially discriminated against her in several ways: (1) through Lane's continuing harassment; (2) by failing to properly process and investigate Marshall's complaint about Lane's behavior; and (3) by subjecting her to counselings. A plaintiff alleging race discrimination must prove her claims by direct or indirect evidence. "[D]irect evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060-61 (7th Cir. 2003). A plaintiff can also prevail under the direct method by presenting circumstantial evidence that points directly to a discriminatory reason for the employer's action. *Id.* Defendants have not admitted that their actions were based on a discriminatory reason, and nothing Marshall has alleged points directly to a racially discriminatory reason for Defendants' actions. Therefore, Marshall must prove her claims under the *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), indirect, burden-shifting method of proof.

Under the indirect method, a plaintiff must first establish a *prima facie* case of discrimination. A *prima facie* case of discrimination requires a showing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the job or was meeting the employer's

legitimate expectations; (3) the plaintiff suffered an adverse employment action; and (4) the employer treated similarly situated employees outside of the protected class more favorably. *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999). An employer may rebut a *prima facie* case by offering a legitimate nondiscriminatory reason for its conduct. *Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir. 1994). At that point, the burden shifts back to the plaintiff to prove that the employer's proffered reasons are merely a pretext for discrimination. *Id*. Defendants do not dispute that Marshall met their legitimate expectations or that she is a member of a protected class – African-American. However, Marshall fails to demonstrate that she suffered an adverse employment action and that similarly situated employees outside of the protected class were treated more favorably.

**1. Marshall fails to show that she suffered an adverse employment action.**

Marshall alleges that the following constituted adverse employment actions: (1) Lane's continuing harassment; (2) Carlson's alleged failure to protect her or respond to her complaint about the incident with Lane; (3) four counselings Marshall received; (4) a purported two month delay in final approval of Marshall's promotion to MHT III; and (5) a failure to promote Marshall to MHT IV in the summer of 2000 because of the delay in her promotion to MHT III. None of these alleged actions constitute material adverse employment actions.

To be actionable under Title VII, an employer's act of discrimination must be "with respect to [the employee's] compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). The Seventh Circuit defines a materially adverse employment action as:

> ... more disruptive than a mere inconvenience or an alteration of job responsibilities. A material adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. Of course, not everything that

8

makes an employee unhappy will suffice to meet the adverse action requirement. *Traylor v. Brown*, 295 F.3d 783, 788-89 (7th Cir. 2002) (internal citations omitted). In order to constitute a materially adverse employment action, the action must have some "tangible job consequence," or constitute a "significant change in employment status." *Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742, 744 (7th Cir. 2002).

Marshall has presented no evidence that Lane's purported harassment had anything to do with Marshall's employment position, salary, career or responsibilities. However, a plaintiff may also establish that she suffered an adverse employment action by showing that her working conditions were changed in a way that subjected her to a "humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in [her] workplace environment – an alteration that can fairly be characterized as objectively creating a hardship . . . ." *Herrnreiter*, 315 F.3d at 744-45. Marshall, however, has not presented sufficient evidence such that a reasonable jury could find that Lane's purported harassment objectively created a hardship and subjected Marshall to a humiliating, degrading, and unsafe work environment. Marshall admits that Lane did not verbally or physically threaten her since the incident on August 13, 1999, and Marshall's allegations of harassment are based on no more than Lane's and Marshall's alleged perpetual arguments with each other.

Marshall also claims that Carlson failed to protect her from Lane and respond to her complaint about Lane, and that this constitutes an adverse employment action. Failure to investigate discrimination complaints potentially could constitute an adverse action if it adversely affects plaintiff's employment conditions. *Bernstein v. Bd. of Educ.*, No. 98-3910, 1999 WL 594920, at *3-4 (7th Cir. Aug. 6, 1999). Moreover, "an employer can be liable under Title VII if the employer had actual or constructive knowledge of the [discrimination] and failed to address the problem

adequately." *Knox v. State of Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996). Defendants, however, properly responded and investigated Marshall's complaints about Lane. Carlson met with Marshall, Lane, and Gordon on the day she received Marshall's complaint. She told Lane to stop her inappropriate behavior and transferred Lane to work in another house for one week. Marshall met again with these people when Lane was scheduled to transfer back to the house where Marshall worked, so that Marshall or Lane could alter their work schedule to avoid working with each other. Furthermore, Marshall met separately with Wade to report the incident with Lane and Carlson's alleged lack of follow-up. Wade, however, did not see a deficiency in Carlson's conduct, and Wade interpreted Marshall's problem with Lane as a problem with moving into a position of authority.

Furthermore, Marshall's complaint about Lane was not about discrimination. Marshall provides no evidence that she complained that Lane discriminated against her based on race. Carlson cannot be liable for failing to investigate a discrimination complaint in the absence of any actual or constructive knowledge that she was faced with a discrimination complaint. *Knox*, 93 F.3d at 1334. Marshall also claims that she complained to Wade that Carlson discriminated against her based on race, but Carlson was not investigated. Marshall's argument still fails, however, because there was no adverse effect on her employment conditions. "Not everything that makes an employee unhappy is an actionable adverse action." *Cullom v. Brown*, 209 F.3d 1035, 1041 (7th Cir. 2000). Marshall's employment position, title, salary, and responsibilities were not adversely affected by Carlson's and Wade's alleged inaction.

In addition, Marshall's counselings do not constitute adverse employment actions because they did not have any job consequences. Marshall admitted that they did not have any effect on Marshall's promotion to the MHT III position and her ability to timely complete the in-class and on-

10

the-job training, and they will not be considered if Marshall decides to bid on an MHT IV position, should one become available. Moreover, Marshall's union contract does not list counselings as discipline, and even Marshall admitted that counselings were not disciplinary actions. Even undeserved write-ups and reprimands that do not implicate sufficiently tangible job consequences fail to constitute adverse actions. *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998); *Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001). To constitute material adverse employment actions, a plaintiff must point to "immediate consequence of the reprimands, such as ineligibility for job benefits like promotion, transfer to a favorable location, or an advantageous increase in responsibilities." *Oest*, 240 F.3d at 613. *See also Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) (employer warnings to employee did not result in, and were not accompanied by, any tangible job consequence, so they were not adverse employment actions).

Marshall also claims that Defendants' aforementioned actions, even if not material adverse employment actions in and of themselves, contributed to a two to three month delay in the final approval of her promotion to MHT III, with the further result that Marshall was prevented from promotion to MHT IV in the summer of 2000. The two to three month delay in the final approval of Marshall's promotion, however, also does not constitute an adverse employment action. Although her promotion was finalized six to ten weeks later than the other MHTs who were up for a promotion to MHT III, the loss in pay was insignificant, and thus, not material, because she received MHT III pay on most of those days by virtue of being temporarily assigned to the MHT III position. Between May 15, 2000, when Marshall claims in her deposition that other MHT II employees were promoted to MHT III, and July 1, 2000, when Marshall's retroactive promotion to MHT III was made effective, Marshall was temporarily assigned and paid as an MHT III for 25 out of the 31 days she worked.

11

"[C]ommon sense and the examples used in the statute's principal section, 42 U.S.C. §2000e-2(a), exclude instances of different treatment that have *little or no effect on an employee's job.*" *Sweeney*, 149 F.3d at 556 (emphasis added). The small amount of money at issue in this case hardly amounts to a "significant change in employment status." *Gulley v. Am. Trans Air, Inc.*, No. 02 C 3616, 2003 WL 22159470, at *5 (N.D. Ill. Sept. 18, 2003).[1]

Furthermore, the evidence does not support the allegation that Marshall was prevented from promotion to the MHT IV position. From 1999 to the summer of 2000, Marshall bid for the position of MHT III, was accepted for that position, timely participated in mandatory in-class and on-the-job training, and was formally promoted to MHT III effective July 1, 2000. Marshall, however, never submitted a bid for the position of MHT IV, and Marshall has presented no evidence that there was even an opening available. Therefore, Marshall has not shown sufficient evidence of any material adverse employment action against her.

### 2. Marshall fails to show that similarly situated employees not in the protected class were treated more favorably.

In addition, Marshall has not shown that similarly situated employees not in the protected class were treated more favorably. Marshall alleges that Beverly Ables, a Caucasian employee, was treated more favorably because her complaint was investigated more thoroughly. In that case, three IDHS employees made complaints that Ables sexually harassed them, and Ables then cross-claimed

---

[1] Marshall cites *Cullom* for the proposition that a delay in promotion must constitute a material adverse employment action. In *Collum*, the Seventh Circuit stated that "because a failure to promote affects the rate of pay and the accrual of leave," denying an earlier promotion is materially adverse. *Cullom*, 209 F.3d at 1042. Marshall, however, does not allege that her accrual of leave was affected, nor does she allege that her rate of pay was *materially* affected. In *Collum*, the plaintiff alleged that he was denied a promotion for *over three years*, unlike in the instant case where Marshall was approved – not denied – the promotion, and was delayed only *two to three months* in receiving the actual promotion.

that she was sexually harassed. Keith Taylor, the EEO/AA Officer at the time, investigated the charges and discharged Ables for sexual harassment. Marshall, however, does not present any evidence that the investigation into the Ables complaints was more thorough than the investigation that Carlson, Taylor, Wade, and Hunter conducted into her complaint against Lane. In addition, Ables was not treated more favorably than Marshall because she was terminated from her job, and Ables was not similarly situated to Marshall because she was terminated for sexual harassment against three co-workers as opposed to Marshall's one claim about Lane's alleged threats.

Marshall also argues that other Caucasian employees, Ken Kimble, John Hansan, and Jan Slocum, were treated more favorably than her. These employees allegedly did not receive counseling when service recipients for whom they were responsible ran from their residential house. However, as Marshall admitted, the consequences for when a service recipient runs from a house are fact specific and can be as severe as a five-day suspension. In addition, Marshall has not presented any evidence as to the specific circumstances surrounding these other incidents. Therefore, the Court cannot determine whether those situations were similar or dissimilar.

### 3. Marshall fails to show that the Bank's nondiscriminatory reasons for its actions were pretextual.

Since Marshall fails to establish a *prima facie* case of discrimination, the Court need not go any further into the analysis. Even assuming, however, that Marshall was able to establish a *prima facie* case, she fails to show that Defendants' legitimate, nondiscriminatory explanations for its conduct were pretextual. To establish pretext, Marshall must show that Defendants' reasons for their actions had no basis in fact, did not actually motivate the decision, or were insufficient to support the adverse action. *Grayson v. O'Neill*, 308 F.3d 808, 820 (7th Cir. 2002). In determining whether

13

an employer's proffered reason for an employment action was pretextual, the court is not concerned with whether the employer made a bad decision, but with whether the employer honestly believed in the reasons it offered. *Wade v. Lerner New York, Inc.*, 243 F.3d 319, 323 (7th Cir. 2001). Defendants offered valid, specific reasons for each counseling they gave,[2] they investigated Marshall's complaints about Lane and Carlson, and they offered nondiscriminatory reasons for the brief delay in Marshall's promotion because certain documents had not been signed. Thus, Marshall has not presented any evidence showing that Defendants' proffered reasons were merely a pretext for discrimination, and summary judgment for Defendants on the discrimination claim is granted.

**B.     Retaliation.**

Marshall claims that Defendants retaliated against her for complaining about Lane and Carlson. Title VII prohibits an employer from retaliating against an employee who has "opposed any practice made an unlawful employment practice by this subchapter or . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under the statute. 42 U.S.C. § 2000e-3(a). There are two methods to prove an employment retaliation claim. *Stone v. City of Indianapolis Public Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). The first method requires direct evidence of retaliation. *Id.* In most cases, direct evidence is not available because direct evidence essentially requires an admission by the employer that its decision was influenced by a retaliatory motive. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). In the absence of direct evidence, an employee may use the indirect method to prove retaliation. *Stone*, 281 F.3d at 644. Marshall does not present any direct or circumstantial evidence necessary for the direct method, and, therefore, she relies on the indirect method.

---

[2]These reasons are described the "Facts" section above.

The indirect method is the adaptation of the *McDonnell Douglas* "burden-shifting" test to the retaliation context. In order to establish a *prima facie* case, an employee must present evidence sufficient to demonstrate four elements: (1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite meeting her employer's legitimate expectations, she suffered a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 465 (7th Cir. 2002). The failure to satisfy any element of the *prima facie* case proves fatal to the employee's retaliation claim. *Id.* If the employee succeeds in proving her *prima facie* case, the second prong of the test requires the employer to offer a legitimate, noninvidious reason for the adverse employment action. *Stone*, 281 F.3d at 644. Once the employer has done so, the burden shifts back to the plaintiff to demonstrate the pretextual nature of the proffered reason. *Id.* As with Marshall's discrimination claim, Marshall fails to establish a *prima facie* case.

### 1. Marshall did not engage in statutorily protected activity.

Marshall alleges that she engaged in statutorily protected activity when she complained about her problems with Lane to Carlson, the Unit Director, and when she complained to Wade, Defendants' internal EEO officer, about Carlson's alleged failure to respond to Marshall's complaints.[3] Complaints about discriminatory conduct to an internal equal employment opportunity officer may constitute protected activity. *Hunt-Golliday v. Metro. Water Reclamation Dist. of*

---

[3]Marshall also claims that her filing of a discrimination charge with the EEOC was protected activity. While this is true, Marshall did not file the charge until June 1, 2000, after all the alleged acts of "retaliation" had taken place. Consequently, Marshall's filing of the EEOC charge cannot be considered in Marshall's claim of retaliation.

15

*Greater Chi.*, 104 F.3d 1004, 1014 (7th Cir. 1997). An employee need not prove that the underlying conduct about which she complains actually violated Title VII, but she must honestly and reasonably believed that the conduct violated Title VII. *Id.* In this case, Marshall fails to present any evidence that the substance of her complaints to Carlson and Wade had anything to do with discrimination or any other activity that Marshall could reasonably believe was protected by Title VII. As the Court explained in the preceding section, Lane's and Carlson's alleged actions or inactions did not constitute discrimination. Merely complaining to an internal EEO officer does not automatically transform the complained about conduct into protected activity. Marshall fails to demonstrate that her belief was reasonable. Therefore, Marshall fails to demonstrate that she engaged in statutorily protected activity.

> 2. **Marshall fails to show that she suffered an adverse employment action.**

Marshall alleges that the Howe Center retaliated against her with the same actions she alleged to support her discrimination claim: delaying the finalization of her promotion to MHT III, resulting in her not being considered for promotion to MHT IV, and giving her counselings. As explained above, however, these actions do not constitute material adverse employment actions. Therefore, Marshall has not stated a claim for illegal retaliation. *See Kersting*, 250 F.3d at 1118.

> 3. **Defendants' alleged employment actions occurred too long after Marshall's alleged protected activity to permit an inference of retaliation.**

Even if Marshall's activity was protected, a ten-month interval between Marshall's complaints about Lane's and Carlson's behavior and the alleged delay in her promotion – even if considered to be an adverse action – is too long of an interval to permit an inference of retaliation. A "substantial time lapse between the protected activity and the adverse employment action is

16

counter-evidence of any causal connection." *Filipovic v. K&R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (internal citations omitted). In *Filipovic*, an interval of four months was too long to permit an inference of retaliation. *Id.* In addition, intervals of five months, *see Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998); nearly six months, *see Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 321 (7th Cir. 1992); and eight months, *see Adusumilli v. City of Chi.*, 164 F.3d 353, 363 (7th Cir. 1998), have been determined to be too long to support an inference of retaliation.

### 4. Marshall fails to show that the Bank's nondiscriminatory reasons for its actions were pretextual.

As explained above, although the Court need not go further than Marshall's failed *prima facie* case, Defendants have offered legitimate, nondiscriminatory reasons for their actions. Although Marshall claims Defendants were dishonest and deceptive in processing her promotion, she fails to present evidence to support this claim. A plaintiff's speculation is not a sufficient defense to a summary judgment motion. *Karazanos v. Navistar Int'l Trans. Corp.*, 948 F.2d 332, 337 (7th Cir. 1991). Therefore, Marshall fails to show that Defendants' proffered reasons were merely a pretext for discrimination, and summary judgment for Defendants on the retaliation count is proper.

## IV. CONCLUSION

Due to the foregoing, the Court finds no genuine issues of material fact have been raised, and the Court grants summary judgment in favor of Defendants on both counts.

IT IS SO ORDERED.

_2/13/04_  
Dated

The Honorable William J. Hibbler  
United States District Court